USDC SCAN INDEX SHEET











MICROSOFT CORP

MICRO STAR

GJ
3:96-CV-02196
*4*
*P/A.*

ORIGINAL

1  PRESTON GATES & ELLIS
   Jane H. Barrett
2  (State Bar No. 53115)
   Howard Kroll
3  (State Bar No. 100981)
   Gary S. Sedlik
4  (State Bar No. 181192)
   725 South Figueroa Street, Suite 2100
5  Los Angeles, California 90017-5524
   (213) 624-2395
6
7  Attorneys for MICROSOFT CORPORATION



8

9              UNITED STATES DISTRICT COURT

10            SOUTHERN DISTRICT OF CALIFORNIA

11 | MICROSOFT CORPORATION, a Washington     ) Case No. '962193 E AJB
   | corporation,                            )
12 |                                         ) **MEMORANDUM OF POINTS AND**
   |                              Plaintiff,  ) **AUTHORITIES IN SUPPORT OF**
13 |                                         ) **MICROSOFT'S APPLICATION FOR**
   |        v.                                ) **TEMPORARY RESTRAINING**
14 |                                         ) **ORDER, ORDER TO SHOW CAUSE**
   | MICRO STAR, a California partnership,    ) **RE: PRELIMINARY INJUNCTION**
15 | STEPHEN H. BENEDICT TECHNOLOGIES,        ) **AND ORDER AUTHORIZING**
   | INC., dba MICRO STAR SOFTWARE;           ) **EXPEDITED DISCOVERY**
16 | STEPHEN H. BENEDICT, dba MICRO STAR      )
   | SOFTWARE; STEPHEN H. BENEDICT, an        ) Date:     January 6, 1997
17 | Individual; PAUL FRIEDMAN, an Individual,) Time:     10:30 am
   |                                         ) Location: Courtroom 3
18 |                              Defendants. )
   |                                         )
19 |                                         )
   |                                         )  *Filed concurrently with Notice of*
20 |                                         )  *Application and Application; Declarations*
   |                                         )  *of Paul Bishop; Shirley Boundy; Graham*
21 |                                         )  *Cross; Rowan Hague; Martine Hebrant;*
   |                                         )  *Darryll Rogers; Michael Wahl; M.R.*
22 |                                         )  *Wright; [Proposed] Preliminary Injunction;*
   |                                         )  *[Proposed] Temporary Restraining Order.*
23 |                                         )
   |                                         )
24

25

26

27

28

J:\GSS\00104-00.060\TROP&A.DOC                    1.

# TABLE OF CONTENTS

I.  INTRODUCTION .................................................................................................. 1

II.  STATEMENT OF FACTS ..................................................................................... 1

    A.  Background of Microsoft's Business .................................................... 2

    B.  Defendants' Unlawful Activities ........................................................... 5

III.  LEGAL ARGUMENT .......................................................................................... 6

    A.  THIS COURT SHOULD TEMPORARILY RESTRAIN
        DEFENDANTS FROM FALSELY IDENTIFYING
        THEMSELVES AS MICROSOFT REPRESENTATIVES
        AND FALSELY OFFERING MICROSOFT SOFTWARE
        PRODUCTS OR SERVICES ..................................................................... 6

        1.  MICROSOFT WILL SUCCEED ON THE
            MERITS OF ITS TRADEMARK/TRADE
            NAME INFRINGEMENT CLAIM ...................................................... 7

            a.  Strength of the Mark ........................................................ 8

            b.  Marketing Channels ......................................................... 8

            c.  Intent ................................................................................ 9

            d.  Actual Confusion ............................................................. 9

            e.  Microsoft is Being Irreparably Injured ........................... 10

            f.  The Balance of Hardship Tilts Sharply in
               Microsoft's Favor ........................................................... 10

            g.  The Public Interest Favors a Preliminary
               Injunction ....................................................................... 11

        2.  MICROSOFT WILL SUCCEED ON THE MERITS
            OF ITS FALSE ADVERTISING/FALSE DESIGNATION
            OF ORIGIN CLAIM ........................................................................ 12

            a.  Defendants' Statements are Literally
               False Descriptions and Representations
               of Fact ............................................................................. 12

            b.  Defendants Acts Constitute Commercial
               Advertising of Goods and Services in
               Interstate Commerce ....................................................... 13

         3.  MICROSOFT WILL SUCCEED ON ITS TRADEMARK
            DILUTION CLAIM ........................................................................ 14

i.

# TABLE OF CONTENTS
### Continued

a.  The Famous MICROSOFT Trademarks
    Have Been Diluted by Micro Star's
    Unauthorized Use ........................................................ 14

b.  MICROSOFT is a Distinctive and Famous
    Mark .......................................................................... 14

c.  Micro Star's Unauthorized Use of the
    MICROSOFT Trademarks Constitutes
    a Dilution of the Distinctive Quality of
    the Mark .................................................................... 15

    1.  Loss of Distinctiveness ...................................... 15

    2.  Dilution By Tarnishment ................................... 16

d.  Microsoft Will Suffer Irreparable Harm
    if Micro Star is Not Enjoined From Its
    Unauthorized Use of the MICROSOFT
    Trademark ................................................................. 17

4.  MICROSOFT WILL SUCCEED ON ITS UNFAIR
    COMPETITION CLAIM ...................................................... 17

    a.  Defendants Conduct Should Be Enjoined
        Pursuant to California's Unfair Competition
        Statutes ................................................................ 17

B.  MICROSOFT IS ENTITLED TO A WRITTEN REPORT
    FROM DEFENDANTS PURSUANT TO 15 U.S.C. § 1116(a) .......... 19

C.  THIS COURT SHOULD AUTHORIZE EXPEDITED
    DISCOVERY TO PERMIT MICROSOFT TO OBTAIN
    INFORMATION NECESSARY TO SUPPORT ITS
    APPLICATION FOR PRELIMINARY INJUNCTION ...................... 19

IV. CONCLUSION ................................................................................. 20

J:\GSS\00104-00.060\TOC.DOC

# TABLE OF AUTHORITIES

## FEDERAL CASES

AMF, Inc. v. Sleekcraft Boats, supra,
    599 F.2d at 349 ..................................................................................................8
Accuride International, Inc. v. Accuride Corp.,
    871 F.2d 1531 (9th Cir. 1989) ............................................................................7
Adray v. Adry-Mart, Inc.,
    68 F.3d 362 (9th Cir. 1995) reh'g. en banc, 96 CDOS 1034 (9th Cir. 1996) ..................8
Anheuser-Busch v. Andy's Sportswear,
    1996 U.S. Dist. LEXIS 15583 (N.D.Cal. Aug. 28, 1996) ...........................................14
Burger King Corp. v. Mason,
    710 F.2d 1480 (11th Cir. 1983), cert. denied, 465 U.S. 1102 (1984) ...........................7
Century 21 Real Estate Corp. v. Sandlin,
    846 F.2d 1175 (9th Cir 1988) .............................................................................18
Church of Scientology International v. Elmira Mission of Church of Scientology,
    794 F.2d 38 (2d Cir. 1986) ...............................................................................10
Cleary v. News Corp.,
    30 F.3d 1255 (9th Cir. 1994) .............................................................................18
Clinique Lab. v. Dep Corp.,
    1996 U.S. Dist. LEXIS 15003 (S.D.N.Y. Oct. 10, 1996) .......................................15, 16
Cook Perkiss & Liehe, Inc. v. Northern California Collection Service, Inc.,
    911 F.2d 242 (9th Cir. 1990) .............................................................................12
Corning Glass Works v. Jeannette Glass Company,
    308 F. Supp. 1321 (S.D.N.Y. 1970), aff'd, 432 F.2d 784 (2d Cir. 1970) .......................11
Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.,
    467 F. Supp. 366 (S.D.N.Y.), aff'd, 604 F.2d 200 (2nd Cir. 1979) ...........................9, 16
Diamontiney v. Borg,
    918 F.2d 793 (9th Cir. 1990) ..............................................................................6
Dollcraft Industries, Ltd. v. Well-Made Toy Manufacturing Co.,
    479 F. Supp. 1105 (E.D.N.Y. 1978) .....................................................................7
Eclipse Associate, Ltd. v. Data General Corp.,
    894 F.2d 1114 (9th Cir. 1990) ..........................................................................8, 9
Edudata Corp. v. Scientific Computers, Inc.,
    599 F. Supp. 1084 (D. Minn. 1984) .....................................................................20
Hormel Foods Corp. v. Jim Henson Products, Inc., 73 F.3d 497 (2nd Cir. 1994) ....................16
Johnson & Johnson-Merck Consumer Pharmaceuticals Co. v.
    Rhone-Poulenc Rorer Pharmaceuticals, 19 F.3d 125 (3rd Cir. 1994) ...........................12
Kelley Blue Book v. Car-Smarts, Inc.,
    802 F. Supp. 278 (C.D.Cal. 1992) ...................................................................18, 19
Lobo Enterprises, Inc. v. Tunnel, Inc.,
    822 F.2d 331 (2d Cir. 1987) ..............................................................................13
Meta-Film Associates, Inc. v. MCA, Inc.,
    586 F. Supp. 1346 (C.D.Cal. 1984) .....................................................................18
Metropolitan Public v. San Jose Mercury News,
    987 F.2d 637 (9th Cir. 1993), summary judgment gr, in part,
    861 F. Supp. 870 (ND Cal 1994) .........................................................................8
New West Corp. v. NYM Co. of California, Inc.,
    595 F.2d 1194 (9th Cir. 1979) .............................................................................9
Ocean Garden, Inc. v. Marktrade Co.,
    953 F.2d 500 (9th Cir. 1991) ..............................................................................8

iii.

1

2

## TABLE OF AUTHORITIES
### Continued

3   Official Airline Guides v. Goss,
        856 F.2d 85 (9th Cir. 1988) ................................................................. 13
4   Optic-Electronic Corp. v. United States,
        683 F. Supp. 269 (D.D.C. 1987) ........................................................... 20
5   Paramount Pictures Corp. v. Video Broadcasting Systems, Inc.,
        724 F. Supp. 808 (D. Kan. 1989) ......................................................... 10
6   Recycled Paper Products, Inc. v. Pat Fashions Industries, Inc.,
        731 F. Supp. 624 (S.D.N.Y. 1990) ....................................................... 20
7   Ringling Brothers v. B.E. Windows Corp.,
        937 F. Supp. 204 (S.D.N.Y. July 11, 1996) ......................................... 14
8   Rodeo Collection, Ltd. v. West Seventh,
        812 F.2d 1215 (9th Cir. 1987) ............................................................. 17
9   Saks & Co. v. Hill,
        843 F. Supp. 620 (S.D.Cal. 1993) .................................................. 18, 19
10  Sandoz Pharmaceuticals Corp. v. Richardson-Vicks, Inc.,
        735 F. Supp. 597 (D. Del. 1989), aff'd, 902 F.2d 222 (3rd Cir. 1990) ......... 12
11  Seuss Enterprises, L.P. v. Penguin Books, USA,
        924 F. Supp. 1559 (S.D. Cal. 1996) ............................................... 14, 15
12  Shatel Corp. v. Mao Ta Lumber & Yacht Corp.,
        697 F.2d 1352 (11th Cir. 1983) ........................................................... 13
13  Toys "R". Us v. Adults "R" Us,
        1996 U.S. LEXIS 17090 (N.D. Cal. October 29, 1996) ...................... 17
14  Vision Sports, Inc. v. Melville Corp.,
        888 F.2d 609 (9th Cir. 1989) ................................................................. 6

15

### STATE CASES

16

17  Allied Artists Pictures Corp. v. Friedman,
        68 Cal. App. 3d 127 [137 Cal.Rptr. 94] (1977) ............................... 18, 19
18  Barquis v. Merchants Collection Associate,
        7 Cal. 3d 94 [101 Cal.Rptr. 745, 496 P.2d 817] (1972) ...................... 18
19  Committee on Children's Television, Inc. v. General Foods Corp.,
        35 Cal. 3d 197 [197 Cal.Rptr. 783, 673 P.2d 660] ............................. 18
20  Consumers Union of United States, Inc. v. Fisher Development, Inc.,
        208 Cal. App. 3d 1433 [257 Cal.Rptr. 151] (1989) ............................ 18
21  People v. McKale,
        25 Cal. 3d 626 [159 Cal.Rptr. 811, 602 P.2d 731] (1979) .................. 18
22  Saunders v. Superior Court (California Reporting Alliance), 27 Cal. App. 4th 832
        [33 Cal.Rptr.2d 438] (1994) ................................................................. 18

23

### FEDERAL STATUTES

24  Fed. R. Civ. P. 30(b)(6) ................................................................................... 20
        Fed. R. Civ. P. 65 ........................................................................................ 6
25  Lanham Act, 15 U.S.C. § 43(a) ..................................................................... 12
        15 U.S.C. § 1065 (trademark registration is conclusive
26      evidence of exclusive right to use mark) ............................................ 7
        15 U.S.C. §§ 1114, 1125 ............................................................................ 7
27      15 U.S.C. § 1115(b) .................................................................................. 4
        15 U.S.C. § 1116(a) ................................................................................. 19

28

J:\GSS\00104-00.069\TOC.DOC

## TABLE OF AUTHORITIES
### Continued

15 U.S.C. §1125(c) .............................................................................................14
15 U.S.C. §1127 ..................................................................................................15

## STATE STATUTES

Cal. Bus. & Prof. Code § 17200 ............................................................................18

## MISCELLANEOUS

Thomas J. McCarthy, McCarthy on Trademarks and Unfair Competition
    (Clark Boardman Callaghan 1996) ................................................................7

v.

J:\GSS\00104-00.060\TOC.DOC

1 **I.     INTRODUCTION**

2        Defendants MICRO STAR, a California partnership, STEPHEN H. BENEDICT

3 TECHNOLOGIES, INC., dba MICRO STAR SOFTWARE, STEPHEN H. BENEDICT, dba

4 MICRO STAR SOFTWARE, STEPHEN H. BENEDICT, an individual, and PAUL FRIEDMAN, an

5 individual (collectively "Defendants"), are conducting an illicit telemarketing scheme improperly using

6 the "Microsoft" trade name and MICROSOFT trademarks to dupe innocent consumers.  The scheme

7 operates as follows:  Defendants' telemarketers make an international call from their Carlsbad,

8 California headquarters to England and introduce themselves to the customer as a Microsoft

9 representative revealing personal information about the customer.  Once gaining the customer's

10 confidence the telemarketer convinces the unsuspecting mark to provide credit card information for

11 the purpose of purchasing a membership in a purported Microsoft software club and Microsoft

12 software.  Interestingly, if the customer reveals that he has no credit card, Defendants' telemarketer

13 abruptly--and often rudely--terminates the call.  Defendants, having absolutely no connection with

14 Microsoft, cannot and thus do not deliver any Microsoft products or services, but quickly debit the

15 customers' credit card account.

16        This sham has caused and continues to cause irreparable injury to Microsoft's reputation, good

17 will, trade name and trademarks.  Microsoft thus requests that this Court issue a temporary

18 restraining order to prohibit Defendants from using the "Microsoft" trade name and/or MICROSOFT

19 trademarks.  Such an order serves the dual purpose of preventing further harm to consumers and

20 protecting Microsoft's rights.

21 **II.     STATEMENT OF FACTS**

22        **A.     Background of Microsoft's Business**

23        Since as early as 1976, and long prior to Defendants' wrongful acts alleged in Microsoft's

24 Complaint ("Complaint"), Microsoft has been in the business of developing, manufacturing and

25 marketing computer software programs.  Microsoft has become well known to the public for its

26 software products that are sold throughout the world.  For many years, Microsoft has had substantial

27 and widespread advertising, promotion, distribution and sales in the United States and throughout the

28

1    world of its software products and related services.  See Declaration of Martine Hebrant ("Hebrant

2    Decl.").

3         Microsoft has conducted its business under the trade name and corporate identification

4    "Microsoft" long prior to Defendants' acts of infringement and other wrongful acts.  See Hebrant

5    Decl.  This "Microsoft" trade name is and has been commonly used by Microsoft in the software

6    business and by the public to identify Microsoft.  Id.  Microsoft continuously has used the designation

7    MICROSOFT as a trademark in connection with a multitude of software products, and in connection

8    with software-related services, distributed and promoted in the United States and worldwide, long

9    prior to Defendants' acts of infringement.  Id.  Microsoft has been and is generally known and

10   identified by the name "Microsoft" long prior to Defendants' acts of infringement and other wrongful

11   acts.  Id.

12        Microsoft has spent substantial sums in advertising and promoting the MICROSOFT

13   trademarks in connection with Microsoft's software products and related services.  See Hebrant Decl.

14   By virtue of such distribution and promotion of Microsoft products and services, the "Microsoft"

15   trade name and the MICROSOFT trademarks have become famous and are known and recognized in

16   the United States and throughout the world.  Id.  The public and trade rely on the "Microsoft" trade

17   name and the MICROSOFT trademarks as identifying the source of Microsoft products and services

18   and as distinguishing those products and services from those of others.  Id.  The "Microsoft" trade

19   name and the MICROSOFT trademarks have come to represent valuable assets belonging exclusively

20   to Microsoft.  Id.

21        Microsoft has duly registered its MICROSOFT trademarks (the "MICROSOFT Trademarks")

22   in the United States Patent and Trademark Office with respect to various software products and

23   related services, including the following:

| Mark | Reg. No. | Reg. Date | Description of Goods/Services | Exhibit |
|------|----------|-----------|------------------------------|---------|
| MICROSOFT | 1,200,236 | 07/06/82 | Computer programs; computer programming services. | A |
| MICROSOFT | 1,966,382 | 04/09/96 | Telecommunications services, namely, the receipt and deliver of messages, documents and other data by electronic transmission. | B |

| | | | | |
|---|---|---|---|---|
| MICROSOFT | 1,684,033 | 04/21/92 | Education and training services; namely, conducting classes and seminars in the field of computers and computer programs. | C |
| MICROSOFT | 1,689,468 | 05/26/92 | Computer programming services; consulting and technical support services in the field of the design and use of computer programs, computers, computer hardware and computer systems; mail order services in the field of computer programs, computer related books and publications, and other computer related products. | D |

Microsoft also has duly registered its MICROSOFT trademarks in the United Kingdom (the "UK MICROSOFT Trademarks") in the Patent Office, Trade Marks Registry of Great Britain and Northern Ireland with respect to various software products and related services as follows:

| Mark | Reg. No. | Reg. Date | Description of Goods/Services | Exhibit |
|---|---|---|---|---|
| MICROSOFT | B1121920 | 09/10/92 | Computer programmes. | E |
| MICROSOFT | 1471270 | 07/20/91 | Education and training services relating to computers and computer programmes; arranging and conducting seminars, all relating to computers and computer programmes; publishing services; all included in Class 41. | F |
| MICROSOFT | 1471271 | 07/20/91 | Computer services; computer programming; computer consultancy and technical support; all relating to the design and use of computer programmes, computers, computer hardware and computer systems; arranging and conducting conferences and exhibitions, all relating to computing; all included in Class 42. | G |
| MICROSOFT | 2017986 | 04/19/95 | Telecommunication services; receipt and delivery of messages, documents and other data by electronic transmission. | H |

Microsoft's trademarks have all acquired incontestable status as set forth in 15 U.S.C. § 1115(b). These registrations are valid and subsisting, unrevoked and uncancelled. See Hebrant Decl.

Microsoft is the owner of these registrations and the marks shown therein and all of the business and goodwill connected therewith.  Id.  A copy of each of these Registrations is attached to the Complaint as Exhibits "A" through "H".  See also Hebrant Decl.

### B.   Defendants' Unlawful Activities

Microsoft has received numerous customer complaints stemming directly from Defendants' unlawful activity related to Defendants' software club service.  See Declaration of Darryll Rogers ("Rogers Decl.").  Nearly all of the complaints describe an identical scheme operated by Defendants to deceive customers in England into believing that they are conducting business with Microsoft, when in fact the customers are being solicited by Defendants' telemarketers to purchase memberships in a software club run by Defendants, not Microsoft, and inducing these unwitting customers to purchase non-Microsoft software.  See Rogers Decl.

Defendants' scheme begins with a phone call to an unsuspecting customer's home or office.  Defendants falsely identify themselves as calling from Microsoft, and attempt to gain the customer's confidence by revealing personal background information about the customer, including name, address and prior software purchase information.[1]  See Declaration of M.R. Wright ("Wright Decl."); Declaration of Rowan Hague ("Hague Decl."); Rogers Decl.  Defendants then attempt to entice the customer into purchasing a "membership" in a software club--a service which regularly mails CD-ROMs containing software programs and utilities for a fee.  See Wright Decl.; Declaration of Graham L. Cross ("Cross Decl."); and Declaration of Paul Bishop ("Bishop Decl.").  Defendants falsely maintain that the CD-ROMs include original Microsoft software and upgrades for Microsoft software to enhance the customer's existing Microsoft software, when in fact none of the Defendants' products mailed in the software club contains Microsoft software.  See Cross Decl.; Bishop Decl.; Rogers Decl.  In addition to the software club memberships, Defendants also hawk individual CD-ROMs purportedly containing Microsoft software and upgrades, when in fact the CD-ROMs contain no such software.  See Cross Decl.; Rogers Decl.  Throughout this deceptive sales pitch, Defendants

---

[1] Microsoft believes that Defendants may have wrongfully obtained confidential trade secret information relating to Microsoft's customers and is using this information to contact potential customers.

1   relentlessly hound the customer for his or her credit card information in order to close the deal, while

2   assuring the customer that Defendants' software service will provide valuable Microsoft software

3   products. See Cross Decl. If the customer refuses to provide a credit card number, Defendants

4   abruptly terminate the call. See Declaration of Shirley Boundy ("Boundy Decl.").

5         Defendants' activity is not casual or occasional. Microsoft has received many complaints from

6   customers who are angry about rude and unprofessional treatment by Defendants, who represent to

7   these customers that they are Microsoft employees, and of Defendants' false promises to provide

8   Microsoft software when no such software is forthcoming. See Rogers Decl. The fact that Microsoft

9   regularly receives complaints about Defendants' activities shows that Defendants are, in fact,

10   successful in their scheme to induce customers into believing that Defendants' services and products

11   are related to Microsoft. The complaints also demonstrate that Defendants' fraudulent and deceptive

12   activities are causing direct and substantial harm to the "Microsoft" trade name, MICROSOFT

13   trademarks and Microsoft's goodwill.

14   **III.   LEGAL ARGUMENT**

15       **A.   THIS COURT SHOULD TEMPORARILY RESTRAIN DEFENDANTS FROM**

16           **FALSELY IDENTIFYING THEMSELVES AS MICROSOFT**

17           **REPRESENTATIVES AND FALSELY OFFERING MICROSOFT**

18           **SOFTWARE PRODUCTS OR SERVICES**

19         To obtain a temporary restraining order or preliminary injunction pursuant to Fed.R.Civ.P. 65,

20   the moving party must show either: (1) a combination of probable success on the merits and the

21   possibility of irreparable harm; or (2) the existence of serious questions going to the merits and the

22   balance of hardships tipping in its favor. Diamontiney v. Borg, 918 F.2d 793, 795 (9th Cir. 1990);

23   Vision Sports, Inc. v. Melville Corp., 888 F.2d 609, 612 (9th Cir. 1989). The moving party need only

24   show the threat of irreparable harm, not necessarily actual harm. Diamontiney, 918 F.2d at 795.

25         As demonstrated below, Microsoft is overwhelmingly likely to prevail on the merits of its

26   claims that Defendants' acts constitute illegal trademark infringement, trade name infringement, false

27   designation of origin, false advertising, trademark dilution and unfair competition . In addition,

28

1  Microsoft will suffer irreparable harm if Defendants' unlawful activities are not halted by a temporary

2  restraining order and preliminary injunction, tipping the balance of hardships decidedly in Microsoft's

3  favor.  Further, Defendants' conduct is reprehensible in that Defendants repeatedly, knowingly and

4  falsely seek to lure consumers into believing that they are dealing with Microsoft and/or receiving

5  Microsoft software products when, in fact, Defendants have no connection whatsoever with

6  Microsoft or Microsoft's products.  Defendants actions are unlawful, illicit and grossly violative of the

7  public trust.  For these reasons, the public interest will be well served by issuance of the temporary

8  restraining order and preliminary injunction that Microsoft seeks.

9           **1.**      **MICROSOFT WILL SUCCEED ON THE MERITS OF ITS**

10                    **TRADEMARK/TRADE NAME INFRINGEMENT CLAIM**

11         Trademark infringement is established by showing that a plaintiff owns a valid mark, that the

12  mark was used without its consent, and that such unauthorized use is likely to cause confusion,

13  mistake or deception.  <u>See</u> 15 U.S.C. §§ 1114, 1125; <u>Burger King Corp. v. Mason</u>, 710 F.2d 1480,

14  1491 (11th Cir. 1983), <u>cert</u>. <u>denied</u> 465 U.S. 1102 (1984).  "Trademark and corporate trade name

15  protection are 'intertwined' [and] governed by the same basic purpose."  <u>Accuride International, Inc.</u>

16  <u>v. Accuride Corp.</u>, 871 F.2d 1531 (9th Cir. 1989).  Protection of trade names "is afforded upon the

17  same basic principle as apply to trademarks in general."  Thomas J. McCarthy, <u>McCarthy on</u>

18  <u>Trademarks and Unfair Competition</u> (Clark Boardman Callaghan 1996), § 9.01[1] (and cases cited

19  therein).  Therefore, the legal argument presented below with respect to trademark infringement also

20  applies to Microsoft's claim for trade name infringement.

21         Microsoft has properly registered trademarks in the term MICROSOFT.  <u>See</u> Exhibits "A"

22  through "H" to Complaint; Hebrant Decl.  Such registration constitutes <u>prima facie</u> evidence of the

23  validity of the trademarks, as well as of the facts stated in the relevant registration certificates.  <u>See</u>

24  <u>Dollcraft Industries, Ltd. v. Well-Made Toy Mfg. Co.</u>, 479 F. Supp. 1105, 1114 (E.D.N.Y. 1978); 15

25  U.S.C. § 1065 (trademark registration is conclusive evidence of exclusive right to use mark).

26         In ruling on whether a plaintiff's trademark has been infringed, a Court must determine

27  whether the public "is likely to be deceived or confused by the similarity of the marks as to source,

28

1    relationship or sponsorship." Eclipse Assoc., Ltd. v. Data General Corp., 894 F.2d 1114, 1118 (9th

2    Cir. 1990).  The Ninth Circuit uses several factors in considering the likelihood of confusion,

3    including the strength of the plaintiff's mark, the similarity of the marks, marketing channels and the

4    proximity of goods or services, defendant's good faith, and evidence of actual confusion. Adray v.

5    Adry-Mart, Inc., 68 F.3d 362, 367 (9th Cir. 1995) reh'g. en banc, denied Adray v Adry-Mart, Inc., 96

6    CDOS 1034 (9th Cir. 1996) (citing AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir.

7    1979)).  Not all factors are necessarily present or relevant in every case. Metro Pub. v. San Jose

8    Mercury News, 987 F.2d 637, 640, (9th Cir. 1993), summary judgment gr. in part, Metro Pub. v San

9    Jose Mercury News, 861 F. Supp. 870 (ND Cal 1994).  In the present case, an analysis of the relevant

10   factors shows that Defendants' use of the "Microsoft" trade name and MICROSOFT trademarks not

11   only is likely to cause confusion, but in fact has caused confusion on numerous occasions. See Cross

12   Decl.; Boundy Decl.; Bishop Decl.; Rogers Decl.

13                           **a.      Strength of the Mark**

14           An inherently distinctive mark "will be afforded the widest ambit of protection from infringing

15   uses." AMF, Inc. v. Sleekcraft Boats, supra, 599 F.2d at 349.  The MICROSOFT marks and

16   "Microsoft" trade name are arbitrary -- this term is not found in the dictionary and does not directly

17   describe Microsoft's goods or services.  Further, the MICROSOFT marks have been used extensively

18   for many years over a wide geographic region and have been strongly promoted by Microsoft. See

19   Hebrant Decl.  Together, these factors point to the strength of the "Microsoft" trade name and

20   MICROSOFT marks and to the broad protection to which it is entitled under controlling precedent.

21   See Ocean Garden, Inc. v. Marktrade Co., 953 F.2d 500, 506 (9th Cir. 1991).

22                           **b.      Marketing Channels**

23           Defendants' activities in falsely identifying themselves and their products as associated with

24   Microsoft is intended to confuse potential purchasers of computer software products into believing

25   that they are being solicited by Microsoft.  Defendants and Microsoft are both engaged in the

26   distribution of computer software products and, although not in direct competition, share the same

27   customer base of personal computer users.

28

1  The Lanham Act specifically provides protection against the type of confusion created by

2  Defendants.  "Today, the test of 'likelihood of confusion' encompasses any type of confusion,

3  including:  confusion of source; confusion of sponsorship; confusion of affiliation; or confusion of

4  connection."  McCarthy § 24.03[2], at 24-12; see also, Dallas Cowboys Cheerleaders, Inc. v.

5  Pussycat Cinema, Ltd., 604 F.2d 200, 204-05 (2d Cir. 1979) ("[t]he public's belief that the mark's

6  owner sponsored or otherwise approved the use of the trademark satisfies the confusion

7  requirement.").  Defendants' conduct directly causes these types of confusion.  See Hague Decl.;

8  Bishop Decl.; Cross Decl.; Boundy Decl.; Rogers Decl.

9          **c.**    <u>**Intent**</u>

10  Courts also consider the intent and good faith of an alleged infringer, although intention to

11  deceive is not necessary to show that confusion is likely.  New West Corp. v. NYM Co. of California,

12  Inc., 595 F.2d 1194 (9th Cir. 1979).  Although no formal discovery has been conducted as to

13  Defendants' intent their affirmative use of the MICROSOFT trademarks and "Microsoft" trade name

14  to hawk their goods raises more than an inference of bad faith and intent to deceive.  It is patent that

15  Defendants are not Microsoft; and, given the evidence at hand, it would truly be incredible, if

16  Defendants did not know that they were perpetrating a sham.  Further, Defendants have no basis to

17  claim mistake or lack of knowledge with regard to their unlawful use of the "Microsoft" trade name

18  and MICROSOFT trademarks.

19          **d.**    <u>**Actual Confusion**</u>

20  The Court may also consider actual confusion in its determination of whether confusion is

21  likely from Defendants' use of the "Microsoft" trade name and MICROSOFT trademarks, although

22  such a showing is not necessary to grant an injunction against use that is likely to cause confusion.

23  Eclipse Assoc., Ltd. v. Data General Corp., 894 F.2d 1114, 1118 (9th Cir. 1990).  Microsoft has

24  shown that consumers actually have been confused by Defendants' use of the "Microsoft" trade name

25  and MICROSOFT trademarks through the Declarations of M.R. Wright, Graham L. Cross, Rowan

26  Hague, Shirley Boundy and Paul Bishop.

27

28

1        e.    **Microsoft is Being Irreparably Injured**

2      Defendants' infringing conduct has harmed and continues to irreparably harm Microsoft for

3  several reasons.  First, irreparable injury is presumed for trademark infringement.  Paramount Pictures

4  Corp. v. Video Broadcasting Systems, Inc., 724 F. Supp. 808, 822 (D. Kan. 1989).  Further,

5  irreparable injury may be found "where there is any likelihood that an appreciable number of ordinary,

6  prudent purchasers are likely to be misled, or indeed simply confused as to the source of the goods in

7  question."  Church of Scientology International v. Elmira Mission of Church of Scientology, 794 F.2d

8  38, 43 (2d Cir. 1986) (citations omitted).  Microsoft has shown through declarations of customers

9  that Defendants' activities actually mislead and confuse customers as to the source of the goods

10  promoted by Defendants.  See Bishop Decl.; Cross Decl.; Wright Decl.; Boundy Decl.; Hague Decl.

11  Further, because Defendants represent themselves to be Microsoft, the frustrated customers have

12  contacted Microsoft to express their displeasure with Defendants' reprehensible telemarketing

13  practices, shoddy products, and poor customer service.  The customers' actions clearly demonstrate

14  that "ordinary, prudent purchasers" have been misled and confused as to the source of Defendants'

15  goods and services, resulting in irreparable injury to Microsoft.  Church of Scientology, supra.

16        f.    **The Balance of Hardship Tilts Sharply in Microsoft's Favor**

17      Microsoft will suffer significant hardship if the requested temporary restraining order and

18  preliminary injunction are not granted in that, inter alia, its market for legitimate products is being

19  harmed and its goodwill and business reputation are being continuously threatened by Defendants'

20  ongoing fraudulent activity.  During this active retail holiday season, Defendants' activities are

21  particularly offensive.  Not only is the innocent consumer being induced to purchase items which he

22  or she does not want or need, but Microsoft's sterling reputation for quality products and services is

23  being tarnished at the height of the holiday retail season, when many consumers traditionally acquire

24  new software.

25      The inconvenience to Defendants, on the other hand, will be minimal.  Defendants will remain

26  fully able to market or otherwise sell products which do not infringe the "Microsoft" trade name and

27  MICROSOFT trademarks if the requested relief is granted.  The only "harm" Defendants will suffer is

28

1 | that they will not be able to engage in the unlawful activities in which they have engaged in the past.

2 | In other words, Defendants have no legitimate interest at stake, since they have no authority by which

3 | to falsely identify themselves as Microsoft or to falsely claim that they are distributing Microsoft

4 | products.  And, given "...the probable outcome of this action, this is a loss which [Defendants] may

5 | justifiably be called upon to bear."  Corning Glass Works v. Jeannette Glass Company, 308 F. Supp.

6 | 1321 (S.D.N.Y. 1970), aff'd, 432 F.2d 784 (2d Cir. 1970).

7 |                 **g.**     **The Public Interest Favors a Preliminary Injunction**

8 |        The cornerstone of trademark laws is the protection of consumers from being misled by

9 | unscrupulous vendors as to the source of goods:

10 |         While plaintiff is injured when consumers purchase [a defendant's merchandise]

11 |         believing it to be [plaintiff's merchandise], consumers, too, are being directly

12 |         victimized.  An injunction is thus in the public interest; only if the distribution

13 |         of [defendant's goods] is stopped can further fraud be avoided.

14 | Corning Glass Works, supra, 308 F. Supp. at 1328.  Defendants' fraudulent, deceptive practices

15 | frustrate the central purposes of the trademark laws.  Further, Defendants' conduct in falsely

16 | appropriating the Microsoft trademark and trade name is precisely the activity against which

17 | trademark laws are designed to protect.  Corning Glass Works, supra.  Defendants intentionally bait

18 | consumers into believing that they are dealing with Microsoft and will be purchasing Microsoft

19 | product, when in fact Defendants have no connection whatsoever with Microsoft, its products or

20 | services.  In addition, Defendants' rude treatment of customers along with their aggressive pursuit of

21 | credit card information causes consumer aggravation and leads to undeserved ill will towards

22 | Microsoft.  A temporary restraining order and preliminary injunction, therefore, will clearly serve the

23 | public interest by halting Defendants' victimization of consumers and continuing fraud upon the

24 | public.

25 | ///

26 | ///

27 | ///

28 |

## 2.   MICROSOFT WILL SUCCEED ON THE MERITS OF ITS FALSE ADVERTISING/FALSE DESIGNATION OF ORIGIN CLAIM

To secure an injunction pursuant to the Lanham Act, 15 U.S.C. § 43(a) for a claim of false advertising and false designation of origin, a plaintiff must plead and prove that a defendant (a) uses a false or misleading description of fact or representation of fact, (b) in interstate commerce and in connection with goods or services in commercial advertising or promotion, (c) when the description or representation misrepresents the nature, qualities, or geographic origin of the defendant's goods, services or commercial activities, and (d) plaintiff has been or is likely to be damaged by these acts. McCarthy, § 27.04; See also Cook Perkiss & Liehe, Inc. v. Northern California Collection Service, Inc., 911 F.2d 242 (9th Cir. 1990).

Microsoft has met its burden with respect to each of these standards, and consequently, Microsoft's Application for injunctive relief should be granted.

### a.   Defendants' Statements are Literally False Descriptions and Representations of Fact

If Defendants' statements are shown to be literally false, Microsoft need not make a showing that Defendants' activities actually misled customers.  Johnson & Johnson-Merck Consumer Pharmaceuticals Co. v. Rhone-Poulenc Rorer Pharmaceuticals, 19 F.3d 125, 129 (3rd Cir. 1994) (Court may grant relief without considering whether the public was misled where a plaintiff proves a challenged claim is literally false.); See also Sandoz Pharmaceuticals Corp. v. Richardson-Vicks, Inc., 735 F. Supp. 597, 600 (D. Del. 1989), aff'd 902 F.2d 222 (3rd Cir. 1990).  Although a showing of reliance by the customer on such falsity is not required, the record clearly shows that consumers have relied to their detriment on Defendants' false statements.  Cross Decl.; Rogers Decl.; Boundy Decl.

Defendants are representing to potential customers that Defendants are Microsoft representatives or employees and that Defendants' services and products emanate from Microsoft. See Cross Decl.; Rogers Decl.; Boundy Decl.  These statements are literally false.  Defendants have no connection whatsoever with Microsoft and are not authorized agents or distributors of Microsoft

1   product.  See Hebrant Decl.  Therefore, Defendants' telemarketing scheme is clearly based on false

2   factual representations and statements designed to mislead consumers.

3           b.      **Defendants Acts Constitute Commercial Advertising of Goods**

4                   **and Services in Interstate Commerce**

5           The Ninth Circuit holds that the use of a mark in a solicitation distributed in a foreign nation

6   constitutes use in "interstate commerce" as provided under the Lanham Act and will support a civil

7   action for mark infringement.  Official Airline Guides v. Goss, 856 F.2d 85 (9th Cir. 1988).  Further,

8   federal courts hold that advertising which "affects interstate commerce and solicitation of sales across

9   state lines or between citizens of the United States and citizens and subjects of a foreign nation is . . .

10  commerce within the meaning of the Lanham Act."  Shatel Corp. v. Mao Ta Lumber & Yacht Corp.,

11  697 F.2d 1352 (11th Cir. 1983); see also Lobo Enterprises, Inc. v. Tunnel, Inc., 822 F.2d 331 (2d

12  Cir. 1987).

13          Defendants are headquartered in Carlsbad, California.  Defendants' scheme is predicated on

14  placing international phone calls from Carlsbad to customers throughout England to advertise their

15  services and products by deceptively appropriating the "Microsoft" trade name and MICROSOFT

16  trademarks.  Defendants provide a "call back" number at their headquarters in Carlsbad, and use the

17  Carlsbad facility to package and ship product abroad.  See Hague Decl.; Rogers Decl.  Defendants

18  utilize their "home base" in Carlsbad to conduct business both within the United States and

19  internationally.  Defendants' conduct in using the "Microsoft" trade name and MICROSOFT

20  trademarks in international solicitations for their services and products clearly constitutes commercial

21  advertising within the meaning of the Lanham Act.  Shatel, supra.

22          Since Microsoft has established above that Defendants' illicit telemarketing activities have

23  caused and are continuing to cause Microsoft harm, and Microsoft has show that its is likely to be

24  damaged by Defendants' conduct (see 3(d) below), Microsoft has met each of the remaining elements

25  to succeed on its False Advertising/False Designation of Origin claim, and this Court should grant

26  Microsoft's Application for a temporary restraining order and preliminary injunction to prevent

27  Defendants from causing further harm to Microsoft and to the public.

28

1    **3.      MICROSOFT WILL SUCCEED ON ITS TRADEMARK DILUTION**

2    **CLAIM**

3        **a.      The Famous MICROSOFT Trademarks Have Been Diluted by**

4        **Micro Star's Unauthorized Use**

5        Micro Star's unauthorized use of the MICROSOFT trademarks constitutes a dilution of a

6    famous trademark under 15 USC §1125(c) ("§1125(c)").  Section 1125(c) entitles the owners of

7    "famous marks" to nationwide injunctive relief against uses that would tend to "dilute" the mark.

8    Seuss Enters., L.P. v. Penguin Books, USA, 924 F. Supp 1559, 1573 (S.D. Cal. 1996).  Section

9    1125(c) created a federal cause of action to protect trademarks from unauthorized users who

10   "attempt to trade upon the goodwill and established renown of such marks."  Ringling Bros. v. B.E.

11   Windows Corp., 937 F. Supp. 204, *8 (S.D.N.Y. July 11, 1996).  Under §1125(c), an owner of a

12   famous mark shall be entitled to an injunction if (1) the mark is famous; and (2) the defendant's use

13   "causes dilution of the distinctive quality of the mark."  Anheuser-Busch v. Andy's Sportswear, 1996

14   U.S. Dist. LEXIS 15583 (N.D.Cal. Aug. 28, 1996).

15       **b.      MICROSOFT is a Distinctive and Famous Mark**

16       In determining whether a mark is distinctive and famous, a court may consider factors such as,

17   but not limited to:  (1) the degree of inherent or acquired distinctiveness of the mark; (2) the duration

18   and extent of use of the mark in connection with the goods or services with which the mark is used;

19   (3) the duration and extent of advertising and publicity of the mark; (4) the geographical extent of the

20   trading area in which the mark is used; (5) the channels of trade for the goods or services with which

21   the mark is used; (6) the degree of recognition of the mark in the trading areas and channels of trade

22   used by the marks' owners and the person against whom the injunction is being sought; (7) the nature

23   and extent of use of the same or similar marks by third parties; and (8) whether the mark was

24   registered under the Act of March 3, 1881 or the Act of February 20, 1905 or on the principle

25   register.  15 U.S.C. §1125(c)(1)(A).

26       Here there can be no dispute that the MICROSOFT trademarks are distinctive and famous.

27   The original MICROSOFT trademark was registered in 1982.  Exhibit A to Complaint.  Since 1976

28

1 | Microsoft has been in the business of developing and marketing computer software programs, and has

2 | actively and aggressively promoted its trademarks and trade name.  <u>See</u> Hebrant Decl.  Microsoft has

3 | become well known to the public for its software products sold worldwide, and is known and

4 | identified throughout the world by the MICROSOFT trademarks.  Clearly MICROSOFT is a

5 | distinctive and famous trademark and entitled to the protection afforded by §1125(c).

**c.      Micro Star's Unauthorized Use of the MICROSOFT Trademarks**

**Constitutes a Dilution of the Distinctive Quality of the Mark**

8 | Dilution is defined as the lessening of the capacity of a famous mark to identify and distinguish

9 | goods or services, regardless of the presence or absence of (1) competition between the owner of the

10 | famous mark and other parties or (2) likelihood of confusion, mistake or deception.  15 U.S.C.

11 | §1127.  Section 1125(c) specifically bars dilution through loss of distinctiveness and the legislative

12 | history supports the conclusion that Congress intended the section to cover dilution through

13 | tarnishment.  <u>Seuss Enters.</u>, <u>supra</u>, 924 F. Supp 1559 at 1573.

**1.      Loss of Distinctiveness**

15 | Dilution by loss of distinctiveness occurs when the defendant uses the plaintiff's trademark to

16 | identify the defendant's goods and services, raising the possibility that the mark will lose its ability to

17 | serve an as unique identifier of the plaintiff's product.  <u>Clinique Lab. v. Dep Corp.</u>, 1996 U.S. Dist.

18 | LEXIS 15003, *48 (S.D.N.Y. Oct. 10, 1996).

19 | Five factors are relevant to assessing dilution through loss of distinctiveness under Section

20 | 43(c) of the Lanham Act:  (1) similarity of the trademarks and trade dress; (2) similarity of the

21 | products; (3) sophistication of consumers; (4) renown of the senior mark and trade dress; and (5)

22 | renown of the junior mark and trade dress.  <u>Id.</u>

23 | Micro Star cannot realistically argue that their use of the MICROSOFT trademark has not

24 | caused a loss of distinctiveness since their use of the trademark is identical to the world-renowned

25 | trademark itself.  Micro Star and its agents/employees have made calls to unsophisticated consumers,

26 | purporting to be representatives of Microsoft in the business of distributing Microsoft software and

27 |

28 |

1   selling memberships to a Microsoft-sponsored software club.[2]  Micro Star's use of the MICROSOFT

2   trademark to distribute products and sell services, the very same type as those distributed and sold by

3   Microsoft, has and will cause the MICROSOFT trademark to lose its distinctiveness and should be

4   enjoined as a dilution of the trademark in violation of §1125(c).

5                              **2.    Dilution By Tarnishment.**

6           In addition to causing a loss of distinctiveness, Micro Star's unauthorized use of the

7   MICROSOFT trademark in its telemarketing scheme has tarnished the MICROSOFT trademark.

8   Tarnishment occurs when the plaintiff's mark is used by the defendant in association with unsavory or

9   shoddy goods or services. <u>Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.</u>, 467 F.

10  Supp. 366 (S.D.N.Y.), <u>aff'd</u>, 604 F.2d 200 (2nd Cir. 1979) (injunction granted under similar statute

11  where defendant's advertisements and exhibits of "Debbie Does Dallas" involved use of uniforms

12  substantially similar to the Dallas Cowboy Cheerleaders).  "The sine qua non of tarnishment is a

13  finding that plaintiff's mark will suffer negative association through defendant's use." <u>Clinique</u>, <u>supra</u>,

14  1996 U.S. Dist. LEXIS 15003, *46, quoting <u>Hormel Foods Corp. v. Jim Henson Prods., Inc.</u>, 73

15  F.3d 497, 507 (2nd Cir. 1994).

16          Microsoft already has suffered tarnishment of its trademark though Micro Star's unauthorized

17  use.  Numerous persons contacted by Micro Star have called or written Microsoft to complain about

18  the rude treatment they received from representatives using the MICROSOFT trademarks and

19  supposedly distributing Microsoft products.  <u>See</u> Rogers Decl.; Wright Decl.; Boundy Decl.

20  Customers are particularly incensed once they recognize that they have been duped, and mistakenly

21  take their justifiable rage out on Microsoft.  Defendants' telemarketing scheme leads directly to

22  consumer perception that Microsoft does not respect its customers' privacy and relentlessly seeks to

23  appropriate customers' credit card information over the phone.  Directly due to Defendants' shoddy

24  treatment of consumers under the guise of the MICROSOFT trademarks and "Microsoft" trade name,

25

26

27  [2]     The only remaining factor is the renown of the junior mark which the court in <u>Clinic</u>
        determined should not be included in a dilution analysis involving a new product. <u>Clinic</u>, <u>supra</u>, at p.
28      51.

1  Microsoft is injured, its trademarks are diluted and its name is tarnished.  Therefore, Micro Star must

2  be enjoined from further damaging Microsoft and the public.

3          **d.**      **Microsoft Will Suffer Irreparable Harm if Micro Star is**

4                      **Not Enjoined From Its Unauthorized Use of the MICROSOFT**

5                      **Trademark**

6        Once a trademark has become diluted, it has lost the strength it once possessed.  <u>Toys "R". Us</u>

7  <u>v. Adults "R" Us</u>, 1996 U.S. LEXIS 17090, *3-4 (N.D. Cal. October 29, 1996).  Thus, once a

8  plaintiff has established the likelihood that the offending use dilutes its trademark, it also has

9  established that it will likely suffer irreparable injury from the continuation of the conduct.  <u>Id.</u> at *3-

10 4; <u>see also Rodeo Collection, Ltd. v. West Seventh</u>, 812 F.2d 1215, 1220 (9th Cir. 1987) (holding

11 irreparable injury is presumed in a trademark action upon a showing of likelihood of success).

12       Microsoft has more than established the likelihood of success on its claim that the

13 MICROSOFT trademarks have been tarnished and lost its distinctiveness through Micro Star's use of

14 its mark.  Thus, the MICROSOFT trademarks have been diluted under §1125(c) and Microsoft is

15 entitled to an injunction of any further use by Micro Star of the MICROSOFT trademarks.

16         **4.**      **MICROSOFT WILL SUCCEED ON ITS UNFAIR COMPETITION**

17                  **CLAIM**

18         **a.**      **Defendants Conduct Should Be Enjoined Pursuant to California's**

19                     **Unfair Competition Statutes**

20       Section 17203 of the <u>Business and Professions Code of the State of California</u> ("Section

21 17203") provides in pertinent part:

22       Any person who engages, has engaged, or proposes to engage in unfair

23       competition may be enjoined in any court of competent jurisdiction.  The court

24       may make such orders such orders or judgments, including the appointment of a

25       receiver, as may be necessary to prevent the use or employment by any person of

26       any practice which constitutes unfair competition, as defined by this chapter . . .

27

28

1    "Unfair competition" is defined to "mean and include any unlawful, unfair or fraudulent business act

2    or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by [Section

3    17500 et seq. of the Business and Professions Code of the State of California]." Cal.Bus.& Prof.Code

4    § 17200 ("Section 17200").

5         Section 17200 is purposely broad and is intended by the Legislature to permit tribunals to

6    enjoin, pursuant to Section 17203, ongoing wrongful business conduct in whatever context such

7    activity might occur. People v. McKale, 25 Cal.3d 626, 632 [159 Cal.Rptr. 811, 602 P.2d 731]

8    (1979); Barquis v. Merchants Collection Assoc., 7 Cal.3d 94, 109-112 [101 Cal.Rptr. 745, 496 P.2d

9    817] (1972). Any business practice which is "unlawful" in the sense that it violates a specific statute

10   may be enjoined under Section 17203. See, e.g., Committee on Children's Television, Inc. v. General

11   Foods Corp., 35 Cal.3d 197, 209-211 [197 Cal.Rptr. 783, 673 P.2d 660]; Consumers Union of

12   United States, Inc. v. Fisher Development, Inc., 208 Cal.App.3d 1433, 1438-1439 [257 Cal.Rptr.

13   151] (1989). By its express terms, "unfair, deceptive, untrue or misleading advertising" may be

14   enjoined pursuant to Section 17203. Cal.Bus.& Prof.Code § 17200. The term "fraudulent" as used

15   in Section 17200 does not refer to common law tort, but only requires a showing that members of the

16   public are likely to be deceived. Saunders v. Superior Court (California Reporting Alliance) (1994)

17   27 Cal.App.4th 832, 839 [33 Cal.Rptr.2d 438]. Trademark infringement and dilution are specifically

18   within the ambit of Section 17200 and 17203. Saks & Co. v. Hill, 843 F. Supp. 620 (S.D.Cal. 1993);

19   see also Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1180-1181 (9th Cir 1988).  So

20   have actions which constitute violations of the Lanham Act. Cleary v. News Corp., 30 F.3d 1255,

21   1262 (9th Cir. 1994); Meta-Film Associates, Inc. v. MCA, Inc., 586 F. Supp. 1346, 1360 (C.D.Cal.

22   1984). As in congruent cases brought under federal and state law, the primary consideration in

23   trademark and advertising-related unfair competition cases under Section 17203 is the "likelihood of

24   confusion." See, e.g., Kelley Blue Book v. Car-Smarts, Inc., 802 F. Supp. 278, 288 (C.D.Cal. 1992);

25   Allied Artists Pictures Corp. v. Friedman, 68 Cal.App.3d 127, 136 [137 Cal.Rptr. 94] (1977); Saks &

26   Co., supra, 843 F. Supp. at 622.

27         As discussed at length above, Microsoft is likely to prevail on the merits of its trademark and

28   advertising-related claims brought under federal law. Microsoft's burden of proof under the

applicable federal law -- likelihood of confusion -- is the same under Section 17203.  Kelley Blue Book, supra, 802 F. Supp. at 288; Allied Artists Pictures Corp., supra, 68 Cal.App.3d at 136; Saks & Co., supra, 843 F. Supp. at 622.  The declarations of M.R. Wright, Rowan Hague, Shirley Boundy, Paul Bishop, Graham Cross, and Darryll Rogers each demonstrates the existence of actual confusion on the part of members of the general public and the likelihood of future confusion if Defendants are permitted to continue their wrongful business conduct.

Defendants' wrongful conduct -- including but not limited to their use of the MICROSOFT trademarks, diminution of those trademarks, and false advertising -- should be enjoined pursuant to Section 17203.  To prevent the possibility of confusion, Defendants should be ordered by this Court to include disclaimers in all of its advertising and telephone sales activities that they are not affiliated in any way with Microsoft.  See Allied Artists, supra, 68 Cal.App.3d at 136 (approving trial court's order that all advertising by defendant include disclaimer to prevent confusion).

**B.    MICROSOFT IS ENTITLED TO A WRITTEN REPORT FROM DEFENDANTS PURSUANT TO 15 U.S.C. § 1116(a)**

Pursuant to 15 U.S.C. § 1116(a), the Court may order Defendants to file and serve within thiry (30) days a written report under oath detailing Defendants' compliance with the Court's injunction.  Id.  To ensure full compliance with the Court's order, and to furnish specific information outlining Defendants' corrective actions, Microsoft requests that this Court order Defendants, and each of them, to provide such a report pursuant to 15 U.S.C. § 1116(a).

**C.    THIS COURT SHOULD AUTHORIZE EXPEDITED DISCOVERY TO PERMIT MICROSOFT TO OBTAIN INFORMATION NECESSARY TO SUPPORT ITS APPLICATION FOR PRELIMINARY INJUNCTION**

Microsoft seeks expedited pretrial discovery regarding Defendants' practices in fraudulently using the Microsoft trade name and the MICROSOFT trademarks in advertising, marketing and promoting Defendants' services and products to unwitting consumers.  Microsoft also seeks accelerated discovery to permit it to learn the identity of the persons or entities from whom Defendants have obtained their information relating to consumers' ownership of Microsoft software products.

1    Such early discovery is permitted in appropriate cases with leave of court, and District Courts

2    routinely grant motions for expedited discovery.  See e.g., Optic-Electronic Corp. v. United States,

3    683 F. Supp. 269, 271 (D.D.C. 1987); Edudata Corp. v. Scientific Computers, Inc., 599 F. Supp.

4    1084, 1088 (D. Minn. 1984); aff'd in part, 746 F.2d 429 (8th Cir. 1984); Recycled Paper Products,

5    Inc. v. Pat Fashions Industries, Inc., 731 F. Supp. 624, 625 (S.D.N.Y. 1990).

6    Because Microsoft cannot timely obtain the relevant and necessary documents and

7    information through standard discovery requests pursuant to the Federal Rules of Civil Procedure,

8    Microsoft requests that this Court authorize Microsoft to pursue expedited discovery with respect to

9    the following categories:

10    (1)    Microsoft, upon three calendar days' notice given by personal service, may take the

11    deposition of any and all Defendants (not to exceed four such depositions), including Defendants'

12    officers, directors, principals, shareholders, agents, servants, employees, and successors, including

13    depositions conducted pursuant to Fed.R.Civ.P. 30(b)(6), if such testimony is reasonably believed to

14    be necessary to obtain evidence for the hearing on the Order to Show Cause Re: Preliminary

15    Injunction in this matter;

16    (2)    Microsoft, upon five calendar days' notice given by personal service, may take the

17    deposition of any and all third parties (not to exceed four such depositions), including said third

18    parties' officers, directors, principals, shareholders, agents, servants, and employees, if such testimony

19    is reasonably believed by Microsoft to be necessary to obtain evidence for the hearing on the Order to

20    Show Cause Re: Preliminary Injunction in this matter.

21    The depositions shall pertain to:

22    a)    Defendants' use of the "Microsoft" trade name and/or MICROSOFT

23    trademarks to market, advertise, offer for sale or otherwise associate Defendants'

24    services or products in any way with Microsoft;

25    b)    Defendants' telemarketing practices, including the Person Most Knowledgeable

26    with respect to Defendants' sales training, advertising, marketing, promotion and

27    international distribution of Defendants' services and/or products;

28

1            c)     The source(s) of Defendants' customer lists.

2      (3)     Microsoft may propound written discovery which it reasonably believes is necessary

3 for it to prevail at the hearing on the Order to Show Cause Re: Preliminary Injunction in this matter.

4 Such written discovery shall be served by personal service, not to exceed ten requests for admissions,

5 ten interrogatories and ten requests for production of documents per Defendant.  Each Defendant

6 must serve a written response via personal service to Microsoft's counsel within three calendar days'

7 of receipt.  Such written discovery shall concern documents describing, relating to or referring to

8 Defendants' use of the "Microsoft" trade name or MICROSOFT trademarks in connection with the

9 distribution, marketing, advertising or promotion of Defendants' products, in addition to the items

10 listed in (2) (a) - (c) above.

11 **IV. CONCLUSION**

12      The relief Microsoft seeks is de minimis in relation to the harm being caused by Defendants.

13 Microsoft is merely asking this Court to restrain and enjoin Defendants from using the "Microsoft"

14 trade name and MICROSOFT trademarks.  In contrast, the harm to the consuming public caused by

15 Defendants' telemarketing scheme is great.  Not only do Defendants' activities invade the privacy of

16 the consumer by obtaining private credit card information, but Defendants have unfairly tarnished

17 Microsoft's reputation--through their explicit misrepresentations as well as their rude, obnoxious and

18 abusive telemarketing practices.  Further, in the midst of the holiday retail season the damage is

19 particularly acute, and calls for this Court to immediately restrain and enjoin Defendants' illicit

20 conduct.

21 ///

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28

1        Thus, Microsoft respectfully request that this Court issue the Temporary Restraining Order,

2 Order to Show Cause Re: Preliminary Injunction, Order Authorizing Expedited Discovery and Order

3 pursuant to 15 U.S.C. § 1116(a) a written report be submitted by Defendants.

4 Respectfully submitted,

5 DATED:  December       1996.            PRESTON GATES & ELLIS

6                                     JANE H. BARRETT
                                    HOWARD KROLL

7                                     GARY S. SEDLIK

8

9                       By
                      Jane H. Barrett

10                       Attorneys for Plaintiff
                      MICROSOFT CORPORATION

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28